**RICHMOND SCREW ANCHOR CO., Inc.,**
**Plaintiff,**

v.

**SUPERIOR CONCRETE ACCESSORIES,**
**Inc., Defendant.**

United States District Court
S. D. New York.
July 10, 1957.

Harry C. Bierman, New York City, for plaintiff.

Herman Seid, New York City, for defendant, Norman Gerlach, Chicago, Ill., Robert W. Fiddler, New York City, of counsel.

DIMOCK, District Judge.

Plaintiff, Richmond Screw Anchor Co., Inc. (hereinafter Richmond) brings this action for a declaratory judgment under section 2201 of Title 28 United States Code, 48 Stat. 955, asserting that Patent No. 2,335,338, Combined Spreader and Tie for Concrete Forms (hereinafter Hillberg patent) owned by defendant Superior Concrete Accessories, Inc., (hereinafter Superior) is invalid. Superior contends that the Hillberg patent is valid and counterclaims for alleged infringement. At the trial Superior relied solely on Richmond's alleged infringement of claim 2 of the Hillberg patent. All contentions of infringement of other claims were withdrawn. Richmond concedes infringement if the patent is found valid.

The patented device is designed for use in the erection of concrete walls. In such erection the liquid concrete is poured between removable wooden panels. As the descriptive name of the device implies, its purpose is to spread these panels so that they will not be less than the required distance away from each other and to tie them so that they will not be more than the required distance away from each other. Various means to accomplish these purposes had been employed in the past.

One means, the Schenk patent (No. 2,-292,548) utilizes two or more straight rods of a length shorter than the desired distance between the two panels. These rods are welded on the outside of two helices or spiral coils so that the ends of the coils are flush with the ends of the rods, the whole forming a cylindrical bundle like the Roman fasces. This combination of rods and coils is referred to as a strut. The inside of each coil naturally forms a very coarse screw thread and it is designed to be engaged by the coarse thread of a bolt or lag screw to be inserted through the coil so that the coil will be wrapped around it. A further part of the device is a pair of truncated cones or frusto-cones, that is, cones from which the point has been cut off by a plane parallel to the base. These are bored longitudinally so as to slip over the lag screws with the small ends of the cones flush against the ends of the coils. The length of the rods plus the length of the cones equals the distance at which it is desired the forming panels be held apart.

In practice, one panel is erected and one of the lag screws is inserted through it from the outside. One of the cones is then slipped over the lag screw so that its base is against the inside of the panel and then the coil at one end of the strut is screwed onto the lag screw so that the cone and the strut protrude at right angles from the panel. This process is repeated in the first erected panel as many times as ties and spreaders are required for that panel and its opposite member. The opposing panel is then erected in substantially the desired position. A hole is drilled through the panel corresponding to each of the holes in the first erected panel. A cone is held manually at each hole with its base against the inside of the panel and its apex against the end of the strut. A lag screw is inserted from the outside of the panel and slipped through the hole and the cone until it engages the coarse thread formed by the coil at the adjacent end of the strut. The lag screw is tightened and, when the process has been repeated for all of the struts, the opposing panels are prevented by the heads of the lag screws from bulging out and by the bases of the cones from moving inwards.

After the concrete has been poured and has solidified the lag screws are backed out and the panels removed, leav-

ing the cones embedded in the concrete. Each cone has a square opening countersunk around the hole where the lag screw has been. A wrench is inserted in this square opening, and, by a rotating motion, the cone is removed, leaving a conical depression which can be filled up with concrete so as to leave a smooth wall. The struts are left permanently in the wall.

Another patent which uses the combination of rods and spiral coils with coarse threaded bolts engaging their interiors is Symons (No. 2,162,869).

A very difficult part of the process of using the Schenk and Symons patents is the holding of the second cone in registry with the end of the strut while the lag screw or bolt is being pushed in from the outside in a case where the desired wall is not thick enough so that a man can stand between the two panels and hold the cone. Various forms of tools have been used to hold the cone from above and move it into the desired position between the panel and the end of the strut.

The Hillberg patent in suit eliminates this difficulty by extending the coils outward beyond the ends of the straight rods. The cone at each end is slipped over the protruding parts of the coils and kept in place either by friction or by the use of an interior coarse thread in the cone which corresponds to the coarse thread formed by the exterior of the coil. The strut with a cone on each end can thus be handled as an integral unit. It is fastened to the first panel, as in the case of the Schenk patent, by a lag screw. Then the second panel is brought up against it with both cones held in place so that there is no necessity for any activity between the panels for that purpose. The lag screws are inserted from the outside of the second panel and engage the interior of the coils as before. The concrete is poured and, when it hardens, the lag screws are removed and the cones which are em-

bedded in the concrete are removed by rotating them with a wrench as in the case of the Schenk patent.

The idea of having the second cone engage upon the strut had been, however, anticipated by the Parmenter patent (No. 2,235,442). That device differs from the device in suit in that the external and internal threads, instead of being formed by the exteriors and interiors of two coils, are cut externally and internally on a single large tie rod or bar which forms the strut. The cones have internal threads and engage the threads on the outside of the tie bar. The lag screw engages the threads on the inside. The method of use is exactly the same as that followed in the employment of the Hillberg patent in suit.

When the application for the Hillberg patent was in the Patent Office, the patent examiner originally rejected it on the ground that Parmenter "teaches the expedient of temporarily securing the spacer cones to the exterior of the internally threaded tie bar, and to apply this teaching to Symons' tie and spacer assembly by the simple and obvious device of omitting the ends of the rods 22 so as to make room for the cones would not amount to invention." The application was amended in such fashion that claim 2 was said to distinguish from the disclosure of the Parmenter patent in that the spacing cone was "adapted to abut against the end face of said one end of the rod".[1] Reconsideration of the application as so amended was asked. Reconsideration was granted and the patent issued.

Claim 2, the claim of the Hillberg patent relied on in this suit reads as follows:

"2. A combined spreader and tie designed for use in connection with a pair of laterally spaced concrete forms and comprising a strut adapted to extend between and transversely of the forms and be permanently embedded in the concrete poured

[1]. For some reason claim 2 refers only to a single rod secured to the side of the coil while the description and two other claims refer to two parallel rods.

therebetween and embodying a rod, an internally and externally threaded member in the form of a helical rod fitting against the side of, and secured to, one end of said rod, and having its outer end free and projecting beyond said one end of the rod, means for temporarily attaching the other end of the rod to the adjacent form, a centrally apertured spacing member of circular cross section adapted to fit between the other form and said other end of the strut and be removed from the concrete by turning after dismantlement of the forms and having the inner end thereof internally threaded to receive the externally threaded free or exposed outer end of the first mentioned member, and adapted to abut against the end face of said one end of the rod and a bolt adapted to extend through said other form and the spacing member and into screw threaded engagement with said first mentioned member."

It will be noticed that one feature of the claim is that the cones are internally threaded to engage the external threads formed by the coils.

The description states that these internal screw threads "afford a more positive removable connection between the spacing members and the internally threaded members". There is no suggestion in the patent that this feature is of assistance in removing the cones after the concrete has hardened. Indeed, from the date of the patent application in 1942, up to 1953, the frictional type cone was used exclusively and only in 1953 did defendant begin to use the threaded cone also. Defendant's expert, Flaherty, claimed no advantage for the threaded cone over the frictional cone. Moreover, the threaded cone was anticipated by Parmenter.

Nevertheless, defendant relies on the ease of removability of the cones from the hardened concrete under its device as the characteristic that distinguishes it from Parmenter and gives it its status as invention.

This ease of removability is said to stem from the fact that, when the concrete hardens, the cones are held upon flexible coils rather than upon rigid rods as in Parmenter. It is said that the cones, unless carefully and expensively machined, will not have their central apertures concentric with their peripheries. Thus it is said that, when an attempt is made to turn a cone embedded in the hard concrete and held upon a rigid rod, the rigidity of the bearing on which it must rotate in combination with the eccentricity of that bearing will prevent its rotation. On the other hand, it is said that, if the eccentric bearing is flexible, as where it consists of a coil, rotation will not be impeded.

Nothing of the kind is suggested in the claims of the patent in suit. In the description, however, the following appears: "It is unnecessary to machine the inner ends of the apertures so that they are truly concentric with the outer peripheries of the spacing members in order to permit of turning of the members in connection with removal thereof from the concrete because there is a certain amount of give or resiliency to the outer protruding ends of the internally threaded members 11 due to the fact that the latter members are formed of helical rods".

This feature of the flexibility of the bearing on which the cone is rotated was not submitted to the patent examiner as a basis for distinguishing the Parmenter patent so that I see no reason for indulging in any presumption against the effect of the Parmenter patent, because of its consideration by the Patent Office in connection with the successful application for the Hillberg patent in suit.

Even if the usual presumption that a patent is valid were strengthened by the fact that the Parmenter patent was cited by the patent examiner I would nevertheless be constrained to hold the Hillberg patent invalid.

For a patent to be valid today it must not only be new and useful but, in addition, be an invention which was not "obvious * * * to a person having

**42**

ordinary skill in the art". 66 Stat. 798, 35 U.S.C. § 103.

The flexible extended coil which defendant claims is the heart of the invention has the form and, according to defendant, part of the function of the familiar spiral spring. I cannot believe that when one has found that the rigidity of a rod is undesirable and substitutes a flexible spiral coil he has created an invention.

Indeed, I have considerable doubt as to the importance of flexibility. None of defendant's advertising material introduced in evidence stresses the ease of removability due to the flexibility of the coil. Flaherty, a salesman for defendant, testified at the trial that the Hillberg invention was the answer to a salesman's dream. The fact stressed by Flaherty, however, was the expedient of temporarily securing the spacer cones to the strut. That was anticipated by the Parmenter patent.

Accepting a presumption of validity and granting that the flexibility of the bearing is an advance, I find that the spiral coil would have been obvious to a mechanic skilled in the art. The Hillberg patent's combination of existing elements plus the novel element of the flexible bearing does not constitute invention.

It is true that the examiner seems to have been persuaded of the patentability of defendant's device because of the positive stop formed by the end of each straight rod. I accept, however, the evidence at the trial that Parmenter's use of tapered pipe-type screw threads to bring the cones to a stop would be equally effective, so that there would be nothing useful in Hillberg's substitution of the ends of the straight rod and hence there would be no invention.

This opinion is intended to embody findings of fact and conclusions of law. If any additional are desired they may be submitted.